# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TYLER DAWSON | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PJM-11-2670 |
| WARDEN | * | |
| Defendant | * | |

***

## MEMORANDUM OPINION

On September 23, 2011, this court issued an Order requiring counsel for the Division of Correction to respond to Plaintiff's allegation that he was being denied medical care for a neck injury and requiring Plaintiff to supplement the Complaint. ECF No. 2.

The response which was filed on October 13, 2011, establishes that Plaintiff was seen by a physician's assistant on September 12, 2011, in response to his complaints that his neck was injured. ECF No. 7 at Ex. 1, p. 15. During the course of the evaluation Plaintiff's claims regarding his neck injury changed as questions were asked. When Plaintiff was later found unconscious in his cell on September 26, 2011, he was taken to the Emergency Room at Baltimore Washington Medical Center. At the hospital a CT scan was performed on Plaintiff's neck and no abnormalities were found. ECF No. 7 at Ex. 1, p. 25. While at the hospital Plaintiff claimed he could not speak and wrote notes to medical staff in response to questions. In light of this claim, Plaintiff was referred for a psychiatric evaluation. There are no reports submitted regarding that evaluation.

Plaintiff filed two supplemental complaints, neither providing names of particular staff members as defendants. He claims that he has a "bone with blood on it" in his neck and that a doctor at the hospital told him that it was his windpipe which did not look normal. ECF No. 3.

The doctor sent Plaintiff for the CT scan which revealed no abnormality.  Plaintiff does not believe the report is accurate and claims he has continued difficulties breathing as well as swelling in his neck.

With respect to his claims regarding protective custody, Plaintiff again does not name any particular staff members with respect to this claim.  Plaintiff explains, however, that when his mother called prison staff and said that her son's life was in danger, Plaintiff was brought to a room for questioning.  He was told that the prison (Jessup Correctional Institution) did not have a protective custody housing unit, but that he would be placed on administrative segregation pending investigation into the claims that he had been threatened.  Plaintiff states he signed a form indicating that he was being considered for involuntary placement on protective custody. ECF No. 4.  He offers no further explanation regarding an ongoing threat to his life.

Plaintiff's supplemental pleadings do not correct the deficiencies in the original filing. Additionally, it appears from Defendants' Response to Show Cause as well as Plaintiff's own allegations that he has been provided care by medical staff and that correctional staff have responded to his concerns regarding his safety.

To the extent Plaintiff does not agree with the medical decisions employed to address his concerns, the Complaint does not state a claim upon which relief may be granted. *See Wright v. Collins*, 766 F.2d 841, 849(4th Cir.1985) (disagreement with medical opinion is not deliberate indifference). In so concluding, the court in no way implies that Plaintiff is not entitled to medical treatment for his condition.  The right to treatment is, however, "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir.1977).  Plaintiff's complaints regarding his neck have thus far been

addressed.

With regard to Plaintiff's claim of threats to his safety, the face of the Complaint establishes that correctional staff have not exhibited deliberate or callous indifference to a specific known risk of harm.  *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); s*ee also Rich v. Bruce*, 129 F. 3d 336, 339– 40 (4th Cir. 1997).

Accordingly, for the reasons stated herein, the Complaint will be dismissed by separate Order which follows.

October 14, 2011

                                              /s/
                            PETER J. MESSITTE
          UNITED STATES DISTRICT JUDGE